IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WANDA MEADOR, | ] |
| Plaintiff, | ] ] ] |
| vs. | ] Case No: ] |
| HSCGP, LLC. d/b/a LIFEPOINT HEALTH, INC., | ] JURY DEMAND ] ] |
| Defendant. | ] |

## COMPLAINT

Plaintiff Wanda Meador, by and through counsel, brings this Complaint against Defendant HSCGP, LLC d/b/a LifePoint Health, Inc. and alleges as follows:

### JURISDICTION & VENUE

1. This action involves the application of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621, et seq., Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), 42U.S.C. § 2000e, *et seq.* and the Fair Labor Standards Act ("FLSA") as Amended by the Equal Pay Act of 1963, 29 U.S.C. § 203, *et seq.*

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

3. The claim asserted in this action arose in Davidson County, Tennessee; therefore, proper venue for this action lies within the Middle District of Tennessee pursuant to 28 U.S.C. § 1391.

### ADMINISTRATIVE PREREQUISITE

4. Plaintiff has fulfilled all conditions precedent to the institution of this action under 42 U.S.C. § 2000e, *et seq*. A Notice of Right to Sue was issued on February 15, 2022, a true and correct copy

of which is attached hereto. Further, Defendant is a corporation that employs more than twenty employees.

## PARTIES

5. Wanda Meador ("Plaintiff" or "Ms. Meador"), is an adult female individual and citizen of the United States who resides in Brentwood, Davidson County, Tennessee.

6. At all relevant times, Ms. Meador was an employee of HSCGLP, LLC d/b/a LifePoint Health, Inc. ("Defendant" or "LifePoint"), within the meaning of the meaning of Title VII, the ADEA, and the FLSA.

7. Defendant is a foreign limited liability company or similar business entity and regularly conducts business at 330 Seven Springs Way, Brentwood, Tennessee 37027.

8. At all relevant times, Defendant was an "employer" engaged in commerce or in an industry or activity affecting commerce and employed twenty (20) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year pursuant to the ADEA and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(b).

## FACTUAL ALLEGATIONS

9. Defendant is a large healthcare company spanning over twenty-nine (29) states.

10. Defendant's healthcare network consists of more than sixty-five (65) hospitals, thirty (30) rehabilitation and behavioral health hospitals, and an array of other healthcare facilities.

11. In November 2007, Ms. Meador began her employment with Defendant as an Accounting Specialist in the Accounting Department.

12. In this role, Ms. Meador exceeded expectations and frequently completed tasks outside of her required job duties.

13. In addition to her essential job duties, Ms. Meador wrote company policies, designed forms in Excel, created a tracking system for employee capital labor, and located high value overlooked credits, tax errors, and billing errors.

14. Defendant frequently requested Ms. Meador use her advanced Excel skills to perform tasks above her pay grade when other employees were unable.

15. Based off her performance, Director of Accounting, Trish Vaughn, and Accounts Payable Manger, Peri Adams, consistently recommended Ms. Meador for promotions.

16. Each time she was recommended, Ms. Meador was denied a promotion by the Chief of Accounting, Mr. Mike Coggin.

17. In 2010, Ms. Meador spoke with the Human Resources Director, Pam Belcher, about her desire to receive a promotion that accurately depicted the work she had been performing.

18. Ms. Blecher indicated that all promotion decisions were up to the discretion of the Chief of Accounting.

19. The Chief of Accounting encouraged Ms. Vaughn to "hire more young men."

20. In May 2010 after persistent denial of promotions, Ms. Meadorvoluntarily transitioned to the role of Financial Analyst within the Information Technology Services Department.

21. Prior to Ms. Meadors transition, the IT Service Department had no financial personnel or a financial section.

22. The Information Technology Department later transitioned to the Health Informatics Technologies Services Department ("HITS").

23. Ms. Meador was hired into the first financial position within the department and she proceeded to build the Financial Management section.

24. Due to her performance, she was appointed to the Executive Leadership Team which was comprised of the Chief Information Officer and departmental Senior Directors/Vice Presidents.

25. Ms. Meador was the only female on the Leadership Team when it was formed and remained the only female many years after.

26. In 2011, Ms. Meador was promoted to Senior Financial Analyst in the HITS Department.

27. As the Senior Financial Analyst, Ms. Meador won a "distinguished employee" award and was recognized for her exceptional job performance.

28. In 2012, Ms. Meador was promoted to Manager of the Financial Management section of the HITS department.

29. Ms. Meador was subsequently promoted to Senior Manager in 2013 where she remained until 2021.

30. As the Senior Manager, Ms. Meador took on more responsibilities and created innovative programs to benefit the company.

31. In 2013 Ms. Meador's hard work and dedication was honored by being chosen to be one of 12 employees to do the groundbreaking for the new corporate office building.

32. In this position, Ms. Meador created positions, trained, and hired all staff in her department and built the Financial Management section of the HITS Department.

33. Many of Ms. Meador's contributions made while building the Financial Management section of the Department, like her policies, programs, and Excel tools, are still used today.

34. As a Senior Manager, Ms. Meador's primary duties included developing and managing the OPEX and capital budgets for the six sections within HITS (over $300M annually), designing and compiling Hospital Budget Guidelines, the management of the procurement process, management of the enterprise-wide telecom expense management program and working closely with the legal department to negotiate contracts.

35. Ms. Meador also oversaw the department's staffing function and vendor management.

36. Ms. Meador maintained her hiring and training roles while still fulfilling several of the Department's budgeting, financial analysis, telecommunication, procurement, contracting, and expense evaluation needs.

37. Further, once a month Ms. Meador met with Human Resources to track the staffing for her department.

38. During this meeting Human Resources advised Ms. Meador of all open positions, new employee hires and promotions/title changes made within HITS, which is the largest department in the company.

39. In 2015, Ms. Meador recognized that she had been performing duties well beyond that of a Director role as compared other Departments.

40. Besides serving on the Executive Leadership team, Ms. Meador was given cash disbursement authorization to sign off on invoices which was an exception to company policy which only allows a VP to have cash disbursement authorization.

41. Accordingly, Ms. Meador reached out to Mr. Sean Tuley, Chief Information Officer, about receiving a promotion that accurately represented her performance and job duties at that time.

42. On or around October 2015, Mr. Tuley informed Ms. Meador that she would need a CPA or MBA in order to be promoted to a Director-level position.

43. On or around January 16, 2022, a Senior Director role was created and filled by Mr. Tommy Dunn.

44. Ms. Meador was replaced by Tommy Dunn when he transitioned into the department.

45. Mr. Dunn did not have a CPA or MBA, did not have as many years of experience, and was completely unfamiliar with the operation, management, and procedures of the HITS Department.

46. Mr. Dunn only took over a portion of the job duties Ms. Meador was performing, yet he received a salary well over double what Ms. Meador was making at the time.

47. Despite this setback, Ms. Meador continued to conduct exceptional work in her Department.

48. However, Ms. Meador began to notice further disparate treatment in her role in comparison to other similarly situated employees in her Department.

49. Specifically, she noticed that two (2) younger men, Mr. Brian Pinson, Senior Financial Analyst, and Mr. Ayan Chaudhuri, Financial Analyst, were receiving preferential treatment.

50. Ms. Meador had similar job duties to Mr. Pinson and Mr. Chaudhuri, but also maintained additional unique management, procurement, and telecommunications duties.

51. One example of Ms. Meador's similar job duties included financial analysis, monthly accruals and top-side capital budgeting.

52. Mr. Pinson and Mr. Chaudhuri would frequently neglect their relative assigned duties for monthly accruals and top-side capital budgeting but were not reprimanded by Mr. Dunn.

53. Instead, Mr. Dunn would frequently require Ms. Meador to cover these duties for Mr. Dunn and Mr. Pinson because "she was so good at them."

54. Additionally, Ms. Meador's workload was larger and completely disproportionate to Mr. Pinson and Mr. Chaudhuri's workload, despite her requirement to fulfill additional job duties.

55. Ms. Meador also worked significantly more "clocked" hours than both Mr. Pinson and Mr. Chaudhuri on average.

56. Despite this, she received several derogatory comments from Mr. Dunn about the need to increase these hours, while Mr. Pinson and Mr. Chaudhuri never received such criticism and worked less hours on average.

57. Furthermore, Mr. Pinson and Mr. Chaudhuri received significantly greater bonus and salary raises during their transition from Financial Analyst to Senior Financial Analyst than Ms. Meador had received through any job transition up to this point.

58. Mr. Dunn boasted to Mr. Meador about how he "went to HR" to fight for big raises for Mr. Pinson and Mr. Chaudhuri.

59. Additionally, Mr. Dunn frequently included Mr. Pinson and Mr. Chaudhuri in high-profile meetings while intentionally excluding Ms. Meador during this time.

60. There was no legitimate basis for keeping Ms. Meador from these meetings as she had been attending them since she started working for the HITS Department.

61. As a result of her exclusion, Ms. Meador's exceptional performance was less observable to "higher-ups" in the company who had the authority to promote and recognize individual accomplishments.

62. During this time, Ms. Meador regularly and routinely expressed her frustrations to Mr. Dunn regarding his preferential treatment of younger similarly situated men in the company.

63. In 2018, 2019 and 2020, Ms. Meador sought a promotion to a Director-level role, such as Assistant Controller, and voiced this desire to management and other employees.

64. Despite the HITS Department's need for another Director level position, Ms. Meador was repeatedly told that no positions were available and that the company was not giving promotions at that time.

65. However, Ms. Meador was aware there were promotion announcements to the contrary.

66. Still, Ms. Meador continued to demonstrate her superior job performance, winning a HITS Star Award for the first and second quarters of 2020 (also in Q4 2016)

67. In February of 2020, Mr. Chaudhuri was promoted to Assistant Controller.

68. Mr. Chaudhuri substantially lacked process knowledge and managerial experience in comparison to Ms. Meador.

69. Ms. Meador had also been the one to hire and train Mr. Chaudhuri.

70. Mr. Dunn intentionally withheld any announcement of Mr. Chaudhuri's promotion for an entire year, until Spring of 2021, when Ms. Meador accidentally received notification of Mr. Chaudhuri's title change.

71. The HR department also intentionally failed to inform Ms. Meador about Mr. Chaudhuri's promotion in their monthly meeting, nor had they published it in the published organizational chart.

72. HR and Mr. Dunn reported every promotion to Ms. Meador for tracking purposes except for Mr. Chaudhuri's promotion.

73. Ms. Meador was especially frustrated as Mr. Chaudhuri passed over the typical position prerequisites of Manager and Sr Manager experience reflected in the promotion to Director that she had been required to move through.

74. Ms. Meador spoke to Tommy Dunn and was informed Mr. Chaudhuri had been promoted because he threatened to leave the company.

75. In 2015, Ms. Meador initially expressed her frustrations to Human Resources regarding their continual discriminatory practice and unequal pay scheme.

76. She expresser her frustrations to others and management continuously throughout her employment.

77. Specifically, Ms. Meador expressed that paying males, with less experience and less responsibility, a higher salary than their female manager was a continuation of already preferential treatment provided to men over women in the company.

78. Additionally, Ms. Meador expressed to Mr. Dunn that honoring these threats was discriminatory to older individuals who have less of an opportunity to leave and start fresh at another position due to their age.

79. Ms. Meador met with her manager to discuss why the promotion was concealed from her for over a year.

80. Mr. Dunn failed to identify a specific reason for concealing this promotion.

81. Mr. Dunn attempted to claim it was because of COVID-19, a wide-spread pandemic.

82. However, the company had not experienced any setbacks due to COVID-19, nor observed any Executive Orders regulating COVID-19 until March of 2020, after Mr. Chaudhuri had already been promoted.

83. Mr. Dunn's stated reason for denying Ms. Meador the promotion is pretext.

84. Defendant concealed this promotion from Ms. Meador in an effort to hide the continuous preferential treatment given to younger, similarly situated men in the HITS Department.

85. There were no female VP's in the HITS department at this time, despite its size and diversity.

86. Defendant failed to identify a non-discriminatory reason for paying Ms. Meador less than similarly situated male employees..

87. Defendant's pay scheme is discriminatory based on gender and age.

88. Coincidentally, Ms. Meador received a promotion to Director of Telecommunications and Procurement only after she filed a charge of discrimination with the Equal Employment Opportunity Commission.

89. This promotion was only accompanied by a seven percent (7%) raise, which is significantly less than the standard raises and benefits packages provided to other similarly situated males within her department and similar departments.

90. Despite the promotion and raise, Ms. Meador still earns less than similarly situated male employees.

## COUNT I – AGE DISCRIMINATION (29 U.S.C. § 623(a)(1))

91. Plaintiff hereby re-alleges the forgoing paragraphs as though fully set forth herein.

92. Plaintiff asserts Defendant discriminated against plaintiff and interfered with her rights in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. 621, et seq.

93. At said dates and times as set forth herein, Plaintiff was over the age of forty (40).

94. Plaintiff's co-workers and supervisors treated her differently and less favorably than younger employees.

95. Plaintiff was treated poorly and received disparate treatment as compared to younger employees who were similarly situated.

96. Defendant violated the Age Discrimination in Employment Act, 29 U.S. C. § 621, et seq. and wrongfully discriminated against Plaintiff on the basis of her age.

97. There is a causal connection between Plaintiff's age and her disproportionate compensation.

98. At all relevant times set forth herein:

   i. Plaintiff was over forty years of age and was qualified to perform the required job duties.

   ii. Plaintiff was denied fair compensation and promotions;

   iii. Plaintiff's potential promotion was disregarded in favor of a substantially younger person;

   iv. Age was the determining factor in the Defendant's decision to discriminate against the Plaintiff; and

   v. Defendant did not have a legitimate, non-discriminatory reason for denying Plaintiff's promotion and commensurate increases in compensation as other younger employees.

99. As a direct and proximate result of the actions of Defendant set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish.

### COUNT II– VIOLATION OF TITLE VII, 42 U.S.C. § 2000e-2
### (SEX DISCRIMINATION)

100. Plaintiff hereby re-alleges the forgoing paragraphs as though fully set forth herein.

101. Plaintiff is a female and a member of a protected class under Title VII of the Civil Rights Act.

102. Plaintiff was qualified for her position.

103. Plaintiff was subjected to disparate treatment because of her sex in violation of Title VII of the Civil Rights Act.

104. Defendant is vicariously liable for the actions of its management and supervisors.

105. As a direct and proximate result of the actions of Defendant set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and anguish.

106. As a direct and proximate result of such actions, Plaintiff has been, is being and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendant's conduct.

## COUNT II– VIOLATION OF TITLE VII, 42 U.S.C. § 2000e-2(h)
## (PAY DISCRIMINATION)

107. Plaintiff hereby re-alleges the forgoing paragraphs as though fully set forth herein.

108. Plaintiff is a female and a member of a protected class under Title VII of the Civil Rights Act.

109. Plaintiff was qualified for her position.

110. Plaintiff was subjected to disparate standards of compensation for similarly situated positions as a result of an intention to discriminate against her due to her sex in violation of 42 U.S.C. § 2000e-2(h) of Title VII of the Civil Rights Act.

111. Plaintiff was subjected to disparate conditions for promotions and leadership positions as a result of an intention to discriminate against her due to her sex in violation of 42 U.S.C. § 2000e-2(h) of Title VII of the Civil Rights Act.

112. Defendant is vicariously liable for the actions of its management and supervisors.

113. As a direct and proximate result of the actions of Defendant set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and anguish.

114. As a direct and proximate result of such actions, Plaintiff has been, is being and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendant's conduct.

## COUNT IV- VIOLATION OF EQUAL PAY ACT, 29 U.S.C. § 203

115. Plaintiff hereby re-alleges the forgoing paragraphs as though fully set forth herein.

116. Plaintiff is a female.

117. Plaintiff was qualified and has sufficient performance in her position.

118. Plaintiff's job description and responsibilities were substantially equal to that of her male counterparts.

119. The conditions where Plaintiff and her male counterparts performed the work were identical.

120. Plaintiff's male counterparts were paid more and given larger raises under these circumstances, in violation of the Equal Pay Act.

121. As a direct and proximate result of the actions of Defendant set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and anguish.

122. Defendant willfully violated Plaintiff's rights under the EPA, and as a result is liable for liquidated damages.

**WHEREFORE**, Plaintiff requests this court enter judgment in favor of the Plaintiff and against Defendant, for:

(1) all amounts of back pay, front pay, wages, bonuses, employment benefits, or other compensation denied or lost by Plaintiff as a result of Defendant's adverse actions against Plaintiff;

(2) a judgment against the Defendant for damages, both compensatory and punitive, in an amount to be determined at trial;

(3) a tax offset to neutralize the tax burden of any award;

(3) attorney's fees, interest and costs; and

(4) any such other legal or equitable relief as may be appropriate or to which she may be entitled under federal or state law.

Respectfully Submitted,

**THE EMPLOYMENT & CONSUMER LAW GROUP**

_/s/ Cullen Hamelin_
**G. BRANDON HALL, BPR No. 034027**
**CULLEN HAMELIN, BPR No. 037317**
1720 West End Ave., Suite 402
Nashville, TN 37203
(615) 850-0632

*Attorneys for Plaintiff*